UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY DERIC PERKINS,

      Plaintiff,                     CIVIL ACTION NO. 10-10089

      v.                             DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

*A.    Proceedings in this Court*

On January 11, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 7, 10).

*B.    Administrative Proceedings*

Plaintiff filed the instant claims on November 30, 2006, alleging that he became unable to work on January 17, 2006 (Tr. 109-113). The claim was initially disapproved by the Commissioner

on February 6, 2007 (Tr. 58-65). Plaintiff requested a hearing and, on May 20, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Troy M. Patterson, who considered the case *de novo*. In a decision dated June 23, 2009, the ALJ found that Plaintiff was not disabled (Tr. 43-53). Plaintiff requested a review of this decision on July 7, 2009 (Tr. 8-10). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 6, 2009, denied Plaintiff's request for review (Tr. 1-3).

After review, I find that the Commissioner's final determination contains errors of law. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for a new hearing consistent with the discussion below.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 31 years old at the time of the most recent administrative hearing (Tr. 51). Plaintiff has some intermittent work history as a carpet layer, construction worker and a house inspector (Tr. 50). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 17, 2006 (Tr. 45). At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative joint disease of the right foot, insomnia and bipolar disorder. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "sedentary work...except that he is limited to work that only involves superficial interpersonal contact with co-workers, supervisors and the general public" (Tr.

47). At step four, the ALJ found that Plaintiff could not perform his previous work as a construction laborer (Tr. 51). At step five, the ALJ denied Plaintiff benefits, because the ALJ found – based on the testimony of a Vocational Expert – that Plaintiff could perform a significant number of jobs available in the national economy, such as assembler (with approximately 30,000 positions in the national economy), inspector (with approximately 12,000 positions in the national economy) or packager (with approximately 88,000 positions in the national economy) (Tr. 52).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff testified that the medications he took for bipolar disorder made him tired and that he slept poorly (Tr. 25). During the day he would cry or become angry for no reason and was constantly depressed (Tr. 27). Plaintiff testified that he had a poor memory (Tr. 27) and stated that he spent most of the day at home (Tr. 26). He testified that he did grocery shopping and housework with his family and visited friends (Tr. 24). Plaintiff stated that he had worked odd jobs installing carpet for his brother-in-law and that he would work one day every other week, but could not do more due to his physical conditions (Tr. 28). He also reported working for his father (Tr. 28). Plaintiff's father testified that as a workday progressed, Plaintiff's psychological condition would deteriorate to the point that he had to remove Plaintiff from job sites (Tr. 31). His father stated that Plaintiff had not completed a full week of work in a long time (Tr. 33).

#### 2. **Medical Evidence**

Plaintiff presented to doctors at McLaren Family Practice Center (McLaren) approximately once a month between June 2006 and April 2007, primarily with physical complaints, but received treatment for depression during five visits (Tr. 211-23). In July 2006, Plaintiff reported to Dr.

Plensdorf that he had increased feelings of anger and depression unrelieved with Prozac (an anti-depressant), but that he was working intermittently inspecting homes with his father (Tr. 222). Dr. Plensdorf increased his dosage of Prozac (Tr. 222). The next month, Plaintiff reported that he had stopped taking Prozac and felt much better without the medication (Tr. 221). In November 2006, Plaintiff reported that he was "doing a lot of work with his dad demolishing homes" and stated in January 2007 that he was still working (Tr. 215, 217). Later in January 2007, Dr. Plensdorf noted that Plaintiff had a long history of anger and depression, and that lately he experienced crying spells, irritability, and suicidal thoughts, but had no intent or plan to carry it out (Tr. 214). Dr. Plensdorf prescribed Wellbutrin (an anti-depressant) and Klonopin for sleep difficulties (Tr. 214). The next month, Plaintiff reported insomnia, depression, and anger, but stated that he was somewhat better and had no suicidal thoughts; Dr. Plensdorf increased his dosage of Wellbutrin (Tr. 213). In April 2007, Plaintiff reported that he stopped Wellbutrin because it increased his depression and that he was seeing a counselor and working as a carpet installer (Tr. 211).

On June 9, 2007, Plaintiff was admitted to McLaren 7 Central, an inpatient psychiatric facility, due to suicidal and homicidal ideas, depression, extreme anger, and physical violence throughout his life (Tr. 283). On examination that day, Dr. Yoo noted that Plaintiff was yelling and screaming and acted threatening and intimidating when asked to submit to an initial evaluation (Tr. 283). Plaintiff later calmed down and reported mood swings, racing thoughts, insomnia, depression, anger and outbursts, and physical violence throughout his life (Tr. 283). Plaintiff had normal intelligence and no memory impairment (Tr. 283). Dr. Yoo diagnosed bipolar disorder, marijuana and Lortab dependance, and antisocial personality disorder (Tr. 284). Dr. Yoo recommended a range of treatment, including therapy (Tr. 284).

On June 11, 2007, Diane Allen, a social worker, interviewed Plaintiff and noted that he came to the facility through an emergency room referral and had been in jail for uncertain reasons prior to admission (Tr. 250). Plaintiff reported that during his inpatient treatment, his sleep had improved, but his mood was labile and he was easily agitated (Tr. 250). He stated that he was unable to maintain employment because of his physical aggression, anger, and rage and that he had recently gotten into a fight with a coworker (Tr. 251).

Plaintiff was discharged to a partial hospitalization program on June 18, 2007, for treatment of bipolar disorder and antisocial personality traits (Tr. 247, 263). Plaintiff regularly attended group therapy sessions during the program and was generally attentive and cooperative, although he sometimes appeared anxious or depressed and had a blunt affect (Tr. 291-314). On admission, a staff member observed Plaintiff and scored her observations on a ten-point scale, with one being no problems or mild problems, five being moderate problems, and ten being severe problems (Tr. 271). The staff member observed that Plaintiff had concentration/focus and irritability/anger problems at a level two and level three manic symptoms (Tr. 271). The next day, the staff member noted that Plaintiff had level two problems in concentration/focus and manic symptoms (Tr. 273).

A staff member noted six days later that Plaintiff had: level five symptoms in depression, anxiety, manic symptoms, irritability/anger, and inadvertent risk to self, others, or property; level six symptoms in concentration/focus; and level two symptoms in social interaction (Tr. 277). Plaintiff's affect did not match his reported mood that day and he reported poor sleep, racing thoughts, and cannabis use (Tr. 277). On June 26, 2007, Plaintiff appeared angry, but reported feeling more stable; the staff member noted problems at a level of four or five in depression, concentration/focus, and inadvertent risk to self, others, or property, as well as problems at a level of two or three in anxiety,

social interaction, and irritability/anger (Tr. 279). Two days later, Plaintiff admitted to using alcohol daily and a staff member assessed him as having problems rated as two or three in the areas of depression, manic symptoms, and irritability/anger (Tr. 281).

On June 29, 2007, Dr. Plensdorf noted that Plaintiff was taking Abilify (medication for schizophrenia) and Depakote (medication used to treat bipolar disorder) while in the program (Tr. 360). Plaintiff left the program against medical advice on July 2, 2007 (Tr. 254-55).

In May 2007, Dr. Plensdorf provided an assessment of Plaintiff's mental functioning and opined that he had moderate limitations in his ability to: relate and interact with supervisors and coworkers; understand, remember, and carry out an extensive variety of technical and/or complex job instructions; deal with the public; and withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity (Tr. 361). He opined that Plaintiff was mildly limited in his ability to understand, remember, and carry out simple one or two-step job instructions and in his ability to maintain concentration and attention for at least two-hour increments (Tr. 361).

Plaintiff presented to Dr. Plensdorf roughly once a month between July and December 2007 for treatment of bipolar disorder, in addition to physical conditions (Tr. 353-59). In August 2007, Plaintiff reported doing well on Abilify and Depakote with a very stable mood and stated that he was back at work (Tr. 357). The next month, Plaintiff stated that he was off Abilify and Depakote and was not able to restart them without sedation, which affected his ability to work; Dr. Plensdorf discontinued Abilify and Depakote and prescribed lithium (a bipolar medication) (Tr. 356). In November 2007, Dr. Plensdorf prescribed fluoxetine (generic for Prozac) (Tr. 354). The next month, Plaintiff reported that he had stopped using cannabis (Tr. 353).

Plaintiff presented to Dr. Plensdorf five times between January and June 2008 for treatment of bipolar disorder and physical conditions (Tr. 347-52). In January 2008, Plaintiff reported feeling "ok" and stated that he was not taking lithium and was working on a subdivision construction project (Tr. 352). Dr. Plensdorf recommended that he restart lithium (Tr. 352). In April 2008, Plaintiff stated that he had stopped taking lithium again because he had run out and reported building a barn and installing carpet (Tr. 350). The next month, Plaintiff stated that he had some improvement in sleep and anxiety since restarting medication and reported working regularly (Tr. 349).

Plaintiff presented to doctors at McLaren on eight occasions between July and December 2008 for continuing treatment of physical conditions and bipolar disorder (Tr. 339-46). In July 2008, Plaintiff reported that he had stopped taking lithium again and that the medication initially helped, but then he would start feeling down, tired, and irritable (Tr. 346). Plaintiff also reported feeling anxious and that he was doing a lot of construction work (Tr. 346). Plaintiff stated later that month that his mood was stable and reported in August 2008 that he was not taking lithium and felt good (Tr. 342, 345). In October 2008, Plaintiff stated that he was doing "pretty well" and "working a lot" and that he had not had time to pick up his lithium; the next month he reported increased anxiety (Tr. 340-41). In December 2008, Plaintiff reported that he had not yet restarted lithium, but that his moods had been stable and that he was selling carpets (Tr. 339).

Plaintiff presented to doctors at McLaren seven times between January and May 2009 for treatment of his chronic conditions (Tr. 334-38, 364). In January 2009, Plaintiff reported that he restarted lithium, which initially caused drowsiness, but that he was stable and installing carpet on a regular basis (Tr. 338). Later that month, Plaintiff expressed concern that he was dependant on pain medications, and that although lithium controlled his mania, his depression had increased;

Plaintiff was prescribed methadone (Tr. 337). In April 2009, Plaintiff reported that he had stopped taking lithium and had recently punched some drywall (Tr. 364).

### 3. Vocational Expert

The ALJ asked the vocational expert (VE) a hypothetical question regarding the existence of jobs for a person of Plaintiff's age, education and past relevant work experience, who could perform sedentary work and was further limited to only superficial interpersonal contact with coworkers, supervisors, and the public (Tr. 34-35). The VE testified that such a person could perform unskilled work as an assembler, inspector, and packager, with a total of 130,000 jobs in the national economy (Tr. 35).

### C. *Plaintiff's Claims of Error*

Plaintiff's sole argument on appeal is that the ALJ committed reversible error by finding that he had moderate deficiencies in concentration, persistence, or pace, but did not include a specific limitation corresponding to that finding in the controlling hypothetical question to the vocational expert (Pl.'s Brief at 6-13).

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this

administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing

in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or

> mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

C.   *Analysis and Conclusions*

As noted above, Plaintiff challenges only one aspect of the ALJ's assessment of his mental condition (Pl's Br. at 6-13).  Plaintiff does not challenge the ALJ's evaluation of his physical impairments.  As Plaintiff only challenges the ALJ's assessment of his limitations in regards to concentration, persistence, or pace, he has waived all other arguments on judicial review.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (the plaintiff abandoned argument not raised in the district court).

A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  The ALJ asked the following hypothetical questions to the VE during the hearing:

> (Tr. 34)
>
> Q. ...Would you assume an individual the same age,
> education and work experience as [Plaintiff]. Assume that this
> individual is limited to sedentary work on a, an exertional basis and
> non-exertionally would be limited to work that involved only
>
> (Tr. 35)
>
> superficial interpersonal contact with co-workers, supervisors and the
> public. This person cannot do [Plaintiff's] past work, but could
> this person do any other work that exist in the economy?
>
> A.  There would be in the sedentary, unskilled category.
> Examples would include assembler, nationally the number is
> approximately 30,000...; inspector, 12,000...; and packager, 88,000....
>
> \*\*\*

> Q. Okay. Let me ask you another hypothetical question. Assume an individual of the same age, education and work experience as [Plaintiff] and assume that, due to a combination of physical and mental problems, this individual is unable to engage in work activity eight hours a day, five days a week on a regular and sustained basis. Could such an individual perform [Plaintiff's] past work or any other work?
>
> A. No.

The ALJ ultimately concluded that Plaintiff could work as an assembler, inspector or packager. Thus, the ALJ relied on the first hypothetical presented to the VE. Plaintiff argues that the use of the first hypothetical was error, since this hypothetical did not include any restrictions on Plaintiff's ability to maintain concentration, persistence or pace. Plaintiff's argument is well-taken.

The case *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010) supports Plaintiff's argument that the hypothetical question relied upon by the ALJ failed to adequately advise the VE of Plaintiff's restrictions. In *Ealy*, a mental RFC assessment of the claimant was conducted by a state agency non-examining physician who "specifically limited [the claimant's] ability to sustain attention to complete simple repetitive tasks to two hour segments over an eight-hour day where speed was not critical." *Id.* at 516 (internal quotations omitted). However, the ALJ's hypothetical omitted these speed and pace-based restrictions entirely. *Id.* Because the Sixth Circuit found that the hypothetical should have included these restrictions, it held that the hypothetical questions did not fully and accurately convey the claimant's limitations to the VE. *Id.*

The instant case is distinguishable from *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), where the Sixth Circuit upheld an ALJ's failure to include a concentration impairment in a hypothetical to the VE. The ALJ in *Smith* found that four of five physicians were correct in assessing the claimant with minimal or negligible concentration problems, while the fifth's

determination that the claimant suffered "an inability to concentrate" was not credible. Because of this finding, the ALJ did not include a concentration impairment in its hypothetical, and the Sixth Circuit found that the hypothetical accurately portrayed the claimant's limitations.

In the present case, the ALJ's controlling hypothetical did not mention any speed or pace restrictions (Tr. 14). However, the ALJ also determined that "with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties" (Tr. 46). The ALJ did not incorporate any limitation concerning Plaintiff's ability to maintain concentration, persistence and pace into the controlling hypothetical. This was error. Because the controlling hypothetical inadequately described Plaintiff's limitations, the VE's testimony that Plaintiff could work as assembler, inspector or packager does not serve as substantial evidence that Plaintiff could perform such work.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that the Court **REMAND** this matter with instructions to return the claim to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: December 14, 2010

*Certificate of Service*

*The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. Mail disclosed on the Notice of Electronic Filing on December 14, 2010.*

*s/Melody R. Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*<br>
*(313) 234-5542*